**IN THE COURT OF CHANCERY FOR THE STATE OF DELAWARE**

LEGENT GROUP, LLC, COR )
ADVISORS LLC, ST. CLOUD )
CAPITAL PARTNERS II, L.P., and )
CARLOS P. SALAS, )
                            )
         Plaintiffs/Counterclaim )
         Defendants, )
                            )
        v. )    C.A. No. 2020-0405-KSJM
                            )
AXOS FINANCIAL, INC., AXOS )
SECURITIES, LLC, and AXOS )
CLEARING, INC., )
                            )
         Defendants/Counterclaim )
         Plaintiffs. )

**ORDER RESOLVING DISCOVERY MOTIONS
AND MOTION TO INTERVENE**

1.     The plaintiffs and counterclaim defendants, Legent Group, LLC, COR Advisors LLC, St. Cloud Capital Partners II, L.P., and Carlos P. Salas (collectively, "Plaintiffs"), are former stockholders of COR Securities Holdings Inc. (the "Company"). Plaintiffs sold the Company to the predecessors in interest of two of the defendants and counterclaim plaintiffs, Axos Securities, LLC and Axos Clearing, Inc. (together, the "Buyers"), under an Agreement and Plan of Merger (the "Merger Agreement") dated as of September 28, 2018.[1]

2.     The Buyers paid $80 million (unadjusted) in cash for the Company. Of that consideration, $7.5 million (the "Withheld Amount") was paid pro rata to each Plaintiff in

---

[1] C.A. No. 2020-0405-KSJM, Docket ("Dkt.") 14, Transmittal Aff. of Thomas E. Hanson, Jr. ("Hanson Aff.") Ex. A ("Merger Agr.").

the form of promissory notes (the "Notes"). The parties agreed that the Withheld Amount would serve as the sole source of payment of Buyers' indemnification claims under the Merger Agreement.[2] The third defendant/counterclaim plaintiff, Axos Financial, Inc. ("Axos Financial," and with the Buyers, "Defendants"), is the counterparty to the Notes and the parent company of the other defendants.

3.     In July 2019, the Buyers tendered a demand for indemnification (the "Demand"). The Demand stated that the Company breached its representations and warranties under the Merger Agreement by failing to disclose Events of Default with respect to Material Contracts, as those terms are defined in the Merger Agreement.[3]

4.     In April 2020, Plaintiffs advised Defendants that they viewed the Demand as meritless and procedurally improper. The Buyers nevertheless defaulted on the Notes, claiming that the loss resulting from the alleged breach exceeded the Withheld Amount.

5.     In May 2020, Plaintiffs filed their Verified Complaint, which contained five causes of action.[4] On January 8, 2021, the court granted in part and denied in part Axos Financial's motion to dismiss, dismissing Counts II through V based on lack of subject matter jurisdiction.[5] Plaintiffs then eliminated those counts by amending their complaint on February 18, 2021.[6] Defendants answered the amended complaint and asserted a

_____

[2] Merger Agr. § 2.4.

[3] Hanson Aff. Ex. B (Demand).

[4] Dkt. 1, Verified Compl. Seeking Dec. J.

[5] Dkt. 30, Order Resolving Mot. to Dismiss.

[6] Dkt. 38, Verified Am. Compl.

counterclaim.[7]  Axos Financial later moved for judgment on the pleadings as to Count I, which the court denied at a hearing on September 8, 2021.[8]

6.  On May 19, 2021, Plaintiffs served a *subpoena duces tecum* (the "Subpoena") upon non-party Scott Reynolds, who was involved in the events leading to the underlying claim for indemnification.[9]  The Subpoena requested production of 41 categories of documents, including some that were produced in a Southern District of Florida action between Reynolds and some of the Defendants, among others (the "Florida Action"), and in a subsequent arbitration before the Financial Industry Regulatory Authority ("FINRA") (the "FINRA Arbitration").[10]

7.  A torrent of motion practice ensued.  On May 28, 2021, Plaintiffs filed a Motion to Enforce *Subpoena Duces Tecum* Directed to Third Party Scott Reynolds (the "Motion to Enforce").[11]  Defendants responded by filing, alongside non-party Axos Clearing LLC, a Joint Motion to Quash *Subpoena Duces Tecum* Served on Scott Reynolds (the "Motion to Quash").[12]  With the Motion to Quash, non-parties Axos Clearing, LLC and Gregory Garrabrants (the "Proposed Intervenors") filed a Motion to Intervene, pursuant to Court of Chancery Rule 24(a)(2) for the limited purpose of filing a motion to

---

[7] Dkt. 42, Defs.' Answer to the Verified Am. Compl. with Affirmative Defenses and Verified Countercl.

[8] *See* Dkt. 103, Oral Arg. and Ruling of the Ct. ("September 8 Arg. Tr.").

[9] Dkt. 49, Notice of Service of Subpoena to Scott Reynolds.

[10] Dkt. 49, Schedule A to Subpoena - Document Requests, Definitions 7–8.

[11] Dkt. 50.

[12] Dkt. 53.

quash the Subpoena (the "Motion to Intervene").[13] Defendants also filed two declarations by one of their attorneys, Polly Towill of Sheppard Mullin, in support of the Motion to Quash and their opposition to the Motion to Enforce (together, the "Declarations"), which Plaintiffs moved to strike (the "Motion to Strike").[14]

8.      The briefing on the Motion to Intervene, Motion to Enforce, and Motion to Quash concluded on August 27, 2021.[15] The court heard oral argument on these motions on September 8, 2021, taking them under advisement. This order resolves these motions.[16]

9.      Beginning with the simplest of the motions, the Motion to Intervene is denied. Under Court of Chancery Rule 24(a)(2), a non-party may intervene in an action as of right when the non-party "claims an interest relating to the property or transaction which is the subject of the action."[17] Intervention is not warranted, however, where the proposed intervenor's "interest is adequately represented by existing parties."[18] Here, the Proposed

---

[13] Dkt. 54.

[14] *See* Dkt. 54 ("First Decl."); Dkt. 76 ("Second Decl."); Dkt. 84 ("Mot. to Strike").

[15] *See* Dkts. 75, 85 (submissions on Motion to Intervene); Dkts. 50, 76 ("Defs.' Ans. Br."), 87 (submissions on Motion to Enforce); Dkts. 53, 77, 86 (submissions on Motion to Quash).

[16] In addition to the four motions that this order resolves, Plaintiffs filed a Motion for Leave to File a Verified Second Amended Complaint, a Motion to Compel the Production of Documents and For Sanctions, and a Motion for Judgment on the Pleadings. *See* Dkts. 71, 74, and 94. The court resolved the former two motions through a bench ruling during the September 28, 2021 hearing and a letter decision filed on October 4, 2021. *See* Dkts. 110, 112. Oral argument on Plaintiffs' Motion for Judgment on the Pleadings is scheduled for November 16, 2021.

[17] Ct. Ch. R. 24(a)(2).

[18] *Id.*

4

Intervenors asserted the same discovery objections as Defendants, attached their names to Defendants' briefs on the motions to enforce and quash,[19] and were represented by the same legal counsel as Defendants.[20] The Proposed Intervenors' interests are adequately represented by the existing parties. The Motion to Intervene is therefore denied.

10. The court next turns to the Motion to Strike, which is also denied.

a. Plaintiffs argue that the first Declaration should be stricken because it failed to include language prescribed by 10 *Del. C.* § 3927. Defendants responded by amending the first Declaration to comply with Section 3927, which remedied the deficiency.[21]

b. Plaintiffs next argue that the Declarations include inadmissible hearsay as to the position of non-party Spartan Securities Group, Ltd. ("Spartan") with regard to the Subpoena. The hearsay objection is unavailing because Spartan's position is evident from an email exchange with Spartan attached as an exhibit to the Motion to Enforce that Plaintiffs themselves submitted.[22] The court will give the Declarations appropriate weight when reviewing them against the email on which Defendants rely.

c. Plaintiffs last argue that the Declarations violate the best evidence rule by attesting to the contents of a Protective Order Agreement entered into by the

---

[19] *See* Mot. to Quash 1; Defs.' Ans. Br. 1.

[20] *See* Defs.' Ans. Br. 15.

[21] *See* Dkt. 91 Ex. 1.

[22] *See* Mot. to Enforce Ex. A.

parties to the FINRA Arbitration without producing the document itself.[23] This objection fails because Defendants have offered to produce the Protective Order Agreement for *in camera* review upon court order. The court so orders such review, mooting the objection.

d. For the foregoing reasons, the Motion to Strike is denied and the Defendants are ordered to provide the Protective Order Agreement from the FINRA Arbitration for the court's review.

11. Finally, the court resolves the competing Motions to Enforce and to Quash the Subpoena. As stated above, the Subpoena seeks 41 categories of documents. In briefing, Defendants helpfully divided those 41 requests into four categories to streamline the analysis.[24] Of those four categories, the parties dramatically reduced the scope of their dispute by the time of argument, such that only the fourth category remained at issue. As the court understands it, Defendants have produced all documents responsive to the Subpoena except for certain pleadings and transcripts generated as part of the FINRA Arbitration and covered by the fourth category of requests.[25]

---

[23] *See* First Decl. ¶¶ 3–4; Second Decl. ¶¶ 3–4; Mot. to Strike 6–7.

[24] Those four categories are: (i) "FINRA regulatory documents," including an Examination Report, a response by Axos Clearing LLC, and FINRA's factual findings concerning Axos Clearing LLC's trading loss controls; (ii) documents that Reynolds himself produced in the FINRA Arbitration and Florida Action; (iii) documents produced by parties other than Reynolds in the FINRA Arbitration and Florida Action; and (iv) pleadings, transcripts, and procedural documents from the FINRA Arbitration. *See* Defs.' Ans. Br. 8–9.

[25] The court bases this assessment—including the belief that the parties' dispute concerning the third category of documents is resolved—on the representations of Defendants' counsel at oral argument. *See* September 8 Arg. Tr. at 53 ("MR. RAMSEY: [T]he Axos documents have been produced. We produced them . . . THE COURT: What hasn't been produced?

a.     Defendants object to the Subpoena as a whole on the grounds that Plaintiffs did not provide notice of the Subpoena to Defendants prior to service, in ostensible violation of Court of Chancery Rule 45(b).  Defendants, however, root this argument in the language of the analogous federal rule and not the distinguishable language of the rules of this court.[26]  Even assuming that Plaintiffs violated Rule 45(b), technical errors like this typically do not justify quashing a subpoena.[27]  This objection is therefore overruled.

b.     Defendants further object to the production of the fourth category of documents on the grounds that such production would violate the Protective Order Agreement entered in the FINRA Arbitration.  Under Delaware law, information is not immune from discovery solely because it is confidential.  Were that the law, not much would be discoverable.  The standard form of confidentiality order, a version of which has been entered in this case,[28] is typically viewed as sufficient to mitigate

MR. RAMSEY: Perfect.  The pleadings in [the FINRA Arbitration] and the transcripts.").  If this understanding is inaccurate, then the parties shall alert the court in a joint letter filed on the docket.

[26] *See* Mot. to Quash 3.  Court of Chancery Rule 45(b), which requires "[p]rior notice of any *commanded production*" is unlike the analogous Federal Rule of Civil Procedure 45, which requires that a party provide notice "*before [a subpoena] is served.*"  Ct. Ch. R. 45(b) (emphasis added); Fed. R. Civ. P. 45(a)(4) (emphasis added).  Thus, Court of Chancery Rule 45(b) requires notice prior to the production of documents and not before the subpoena is served.  Because Reynolds has not yet produced any documents in response to the Subpoena, Plaintiffs have not violated Rule 45(b).

[27] *Hendry v. Hendry*, 2005 WL 3359078, at *5 (Del. Ch. Dec. 1, 2005) ("Absent a showing of bad faith or prejudice . . . technical errors do not justify quashing a subpoena.").

[28] *See* Dkt. 47.

any concerns of public disclosure resulting from the production of confidential information.[29] Thus, the mere fact that the FINRA Arbitration materials are confidential does not immunize them from discovery. Indeed, this court has ordered the production of arbitration materials in the past,[30] and other courts have reached similar conclusions.[31]

      c.     That said, Delaware public policy favors arbitration, and confidentiality is vital to that process.[32] This court will carefully balance the benefits of a confidential arbitration process against the costs of shielding that information from discovery. In this case, on the record before the court, Plaintiffs

---

[29] *See, e.g.*, *Senetas Corp., Ltd., v. DeepRadiology Corp.*, 2019 WL 3430481, at *9 (Del. Ch. July 30, 2019) ("For many of [the defendant's] concerns, I am convinced that a confidentiality agreement can safeguard that information and adequately protect [the defendant] from potential harm."); *Bragdon v. Bayshore Prop. Owners Ass'n, Inc.*, 2019 WL 340720, at *1 (Del. Ch. Jan. 25, 2019) ("If warranted, the [defendant] can designate the materials as confidential under the confidentiality order entered in this litigation . . . The confidentiality order provides sufficient protection."); *Jefferson v. Dominion Hldgs., Inc.*, 2014 WL 4782961, at *2 (Del. Ch. Sept. 24, 2014) ("[The defendant's] confidentiality concerns are adequately protected by a confidentiality order.").

[30] *See, e.g.*, *Dawson v. Pittco Cap. P'rs, L.P.*, 2010 WL 692385, at *1 (Del. Ch. Feb. 15, 2010) (ordering the production of arbitration materials).

[31] *See, e.g., Sandoz Inc. v. Lannett Co., Inc.*, 2021 WL 3022431, at *1 (E.D. Pa. July 16, 2021) (ordering the production of arbitration materials in a separate proceeding "[g]iven the close relationship between" the two proceedings. The court observed that the proponent's compelling "interest in discovery . . . outweigh[ed] any institutional concerns about preserving the confidentiality of arbitration proceedings."); *U.S. Panhandle E. Corp.*, 118 F.R.D. 346, 347, 351 (D. Del. 1988) (denying a motion for a protective order to prevent the disclosure of confidential arbitration documents).

[32] *See generally Continental Casualty Co. v. BorgWarner*, 2016 WL 1169107, at *3 (Del. Super. Mar. 15, 2016).

have not demonstrated any significant costs or prejudice that would arise from blocking discovery into the limited category of remaining documents.

      d.     The Motion to Enforce, therefore, is denied as to the few remaining documents in dispute, but without prejudice to Plaintiffs' ability to reassert a motion later if the discovery record demonstrates that such documents have greater significance than it currently seems. The Motion to Quash is granted to the same degree and again without prejudice.

12.     For the foregoing reasons, the Motion to Intervene is DENIED, the Motion to Strike is DENIED, the Motion to Enforce is DENIED as to the remaining documents, but without prejudice, and the Motion to Quash is GRANTED as to the remaining documents, again without prejudice to the plaintiffs. The remainder of the competing Motions to Enforce and Quash are held in abeyance pending the court's review of the FINRA Protective Order Agreement, which the Defendants are ordered to provide. Each side shall bear their own costs incurred in connection with the motions.

                       */s/ Kathaleen St. J. McCormick*
                       Chancellor Kathaleen St. Jude McCormick
                       Dated: October 6, 2021